Shirley I. WILLIAMS, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.

Civ. No. H 86–668.

United States District Court, N.D. Indiana, Hammond Division.

June 4, 1987.

---

Charles F. Marlowe, Hammond, Ind., for plaintiff.

Gwenn R. Rinkenberger, Asst. U.S. Atty., Hammond, Ind., for defendant.

MOODY, District Judge.

### ORDER

Plaintiff Shirley I. Williams brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (Act), 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the Secretary of Health and Human Services' (Secretary) final decision denying her benefits under Title II and Title XVI of the Act. The plaintiff filed a Motion for Summary Judgment on March 23, 1987. The Secretary filed a Motion for Summary Judgment on April 13, 1987.

### I.

### PROCEDURAL HISTORY

The plaintiff filed applications for disability insurance benefits on March 9, 1987 and on March 7, 1980 and an application for Supplemental Security Income (SSI) on April 17, 1978. These applications were denied through the administrative law judge (ALJ) level and were not further appealed.

The plaintiff filed another application for disability insurance benefits on June 9, 1982 which was denied initially and on reconsideration. On June 20, 1983, an ALJ found that the plaintiff was not disabled at any time prior to the expiration of her insured status on June 30, 1982. She did not appeal this decision further.

On July 9, 1983, the plaintiff filed applications for disability and SSI benefits. The disability application was denied on the ground that the ALJ's decision of June 20, 1983 had already found the plaintiff "not disabled" as of the date she was last insured and that the facts had not changed in

the interim. The application for SSI was denied initially and upon reconsideration and on May 21, 1985, the plaintiff requested a hearing on the SSI denial.

The plaintiff filed another disability application on March 22, 1985 which was again denied because of the previous finding by the ALJ that the plaintiff was "not disabled" as of the date she was last insured.

On April 22, 1985, the plaintiff requested a hearing on the denial of SSI and disability benefits. The ALJ conducted the hearing on June 18, 1985 and considered the case de novo. The ALJ declined to reopen the disability benefits applications of July 9, 1984 and March 22, 1985 on the ground that the prior ALJ decision finding her "not disabled" was *res judicata*. The ALJ further decided that the plaintiff was not eligible for SSI and denied her application of July 9, 1984 because he found that she was not disabled and did not otherwise qualify for SSI. The ALJ's decision became the final decision of the Secretary on August 6, 1986 when the Appeals Council declined further review. The plaintiff's appeal raises three issues: (1) whether the ALJ's conclusion that the plaintiff's heart disease is not disabling is supported by substantial evidence; (2) whether the ALJ placed proper weight on the plaintiff's treating physician's conclusion that the plaintiff was disabled; and (3) whether the ALJ properly found that the previous finding of "not disabled" was *res judicata* on the issue in this case.

## II.

### STANDARD OF REVIEW

SSI

To qualify for supplemental security income benefits under Section 1602 of the Social Security Act, 42 U.S.C. § 1381a, an individual must meet the income restrictions of the Act, file an application for benefits and be an "aged, blind, or disabled individual" as defined in the Act. 42 U.S.C. § 1381a.

An individual is "disabled" as defined in § 1614(a)(3)(A) of the Act if she is

(A) unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Thus, to establish that she is disabled and entitled to benefits, a plaintiff must first present evidence of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months and, second, the impairment must render the plaintiff unable to engage in any substantial gainful work. 42 U.S.C. § 1382c(a)(3)(A) & (B); *Lieberman v. Califano*, 592 F.2d 986 (7th Cir.1979).

*Disability Insurance Benefits*

To qualify for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, an

individual must meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423. The term "disability" in Section 223 has the same meaning as in Section 1602 described above.

Under both Title II and Title XVI, the burden of proof rests upon the plaintiff to establish entitlement to benefits under the Social Security Act. *Johnson v. Weinberger*, 525 F.2d 403 (7th Cir.1975). This court must review the evidence in the record to determine whether the opinion of the Secretary is supported by substantial evidence on the record as a whole. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982). The court's review is limited and this court may not "decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Secretary." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support [the] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Garfield v. Schweiker*, 732 F.2d at 607.

### III.

The plaintiff was forty-four years old at the time of the hearing and had the equivalent of a high school education. She testified that she has taken courses in bookkeeping and nursing. She has worked as a nurse's aid, a switchboard receptionist, and a cashier. She alleged that she became unable to work on February 9, 1978 because of heart trouble, stomach problems, and irritated bowel syndrome.

### A.

The plaintiff contends that the ALJ's conclusion that her heart disease is not disabling is not supported by substantial evidence. The plaintiff contends that the ALJ erred in concluding that she does not have congestive heart failure. Congestive failure qualifies as an impairment if accompanied by persistent left ventrical enlargement and hypertrophy documented by both:

1. Extension of the cardiac shadow (left ventricle) to the vertebrae column on a left lateral chest roentrogram; and

2. ECG showing QRS duration less than 0.12 second with $S_{v1}$ plus $R_{v6}$ (or $R_{v6}$) of 35 mm. or greater *and* ST segment depressed more than 0.5 mm. *and* low diphasic or inverted T waiver in leads with tall R waves.

Dr. Bruce A. Guberman, M.D., examined the plaintiff and reported on August 14, 1984 that he found no clinical evidence of congestive heart failure. He reported an absence of distension in her neck veins, no $S_3$ gallop, no heptajugular reflex, and no pedal edema.

On August 23, 1984, Dr. Henry J. Merciniak, M.D., reported that the EKG showed premature ventricular contractions, first degree atrioventricular block, left ventricular hypertrophy and nonspecific ST and T wave changes. He concluded that the objective medical evidence did not document a severe impairment regarding work related functions.

A chest X-ray taken in November of 1984 revealed mild cardiomegaly but no evidence of pulmonary congestion or infiltrate and no evidence of pleural effusion. Dr. S. Garlapate, M.D. at that time diagnosed the plaintiff as having cardiac arrhythmia with premature ventricular contractions and second degree atrioventricular block but ruled out the existence of coronary artery disease and early congestive heart failure.

In January, 1985, Dr. Guberman again examined the plaintiff and found evidence of an enlargement of the heart but no evidence of congestive heart failure, neck vein distension, abnormal respiratory sounds, $S_3$ gallop, or edema. In March, 1985, Dr. A.K. Goel, the plaintiff's treating physician rendered his opinion that the plaintiff's chest and abdominal pain are not secondary to coronary heart disease and that the abnormal T wave changes on her electrocardiogram were instead secondary to cardiomyopathy. Another physician, Dr. M. Singh ruled out coronary heart disease after an examination of the plaintiff in

March, 1985. In November, 1985, Dr. Garlapati reported that EKG's revealed left ventricular hypertrophy and non-specific ST wave changes but that the EKGs and cardiac enzymes were negative for myocardial infarction. He also reported that the plaintiff's premature ventricular contractions were controlled by Quinidine. He ruled out pulmonary embolus, possible early congestive heart failure and acute myocardial infarction.

■ This medical evidence relating to the cardiovascular system was duly considered by the ALJ. The medical testimony and reports provide substantial evidence to support the ALJ's conclusion that the plaintiff does not have cardiovascular impairments which are so severe that they meet or equal the set of criteria in the CFR Listing of Impairments.

### B.

The plaintiff also contends that the ALJ did not afford sufficient weight to Dr. Randall C. Morgan's conclusion that the plaintiff's chronic low back problems rendered her disabled for more than a 12–month period of time. Dr. Morgan examined the plaintiff on August 17, 1985 and September 24, 1985 and reported on November 15, 1985 that the plaintiff's back problem would render her disabled for at least 12 months. The plaintiff claims that the ALJ erred in failing to even mention Dr. Morgan's conclusion that the plaintiff was disabled.

■ However, the record reveals that the ALJ adequately considered Dr. Morgan's report and did not accord it great weight because the report contained no medical signs or laboratory findings to support his diagnoses. An ALJ need not defer to the opinion of a treating physician if the physician's conclusion as to disability is not supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926. A physician's conclusion as to whether a patient is disabled from employment is not a medical statement but is a "proposition about how particular medical impairments produce reductions in physical exertion, and how such reductions

in physical exertion affect the ability to work." Unless the physician reports the impairment with medically acceptable diagnostic techniques and reports how the impairment affects the claimant's ability to perform specific tasks, his statement of disability is not a medical opinion entitled to the deference by the ALJ. Accordingly, the ALJ did not err in giving Dr. Morgan's opinion very little deference.

### C.

■ The plaintiff also asserts that the ALJ erred in finding the previous ALJ decisions had preclusive *res judicata* effect on the plaintiff's claims for disability insurance benefits. The plaintiff cites a case in which the court stated that once the Secretary reopens a prior determination, that prior determination loses its *res judicata* effect and the subsequent ensuing decision is subject to judicial review. *Tackett v. Heckler,* 627 F.Supp. 545, 548–49 (S.D.W. Va.1986). However, unlike *Tackett,* 627 F.Supp. at 549, the ALJ in the present case did not reopen the plaintiff's claim and expressly refused to reopen the claim without reconsidering the merits. This court lacks jurisdiction to review a decision by the Secretary refusing to reopen a claim under such circumstances. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

### CONCLUSION

Because the Secretary's conclusion that the plaintiff is not entitled to Supplemental Security Income or disability insurance benefits is supported by substantial evidence it must be upheld. *Davis v. Califano,* 603 F.2d 618, 625 (7th Cir.1979). Accordingly, the plaintiff's Motion to Summary Judgment is DENIED and the defendant's Motion for Summary Judgment is GRANTED. The Clerk of the Court is hereby DIRECTED to ENTER JUDGMENT accordingly.