McClellan WRIGHT, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant.

No. S 83–150.

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 21, 1987.

Robert C. Rosenfeld, South Bend, Ind., for plaintiff.

Clifford Johnson, Asst. U.S. Atty., South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is before the court as an action for judicial review of a final decision of the Secretary that the plaintiff is not entitled to disability benefits pursuant to §§ 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 416(i), 423. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). The plaintiff originally filed her application on November 9, 1981. Her application was denied initially and on reconsideration. A hearing was held on October 18, 1982, at which the plaintiff appeared with a friend, and was represented by counsel. Administrative Law Judge (ALJ) Graf concluded, in a decision dated October 29, 1982, that the plaintiff did not have a severe impairment and was, therefore, not disabled. On February 7, 1983, this decision became the final decision of the Secretary by the affirmance of the Appeals Council. The plaintiff then filed a complaint with this court on April 8, 1983.

In an order dated October 24, 1983, this court determined that "the medical evidence leads solely to the conclusion that this plaintiff cannot perform her former work." The order further established that "the burden clearly shifted to the defendant to show that plaintiff had a residual functional capacity to engage in other substantial work activity." The court ordered that the case be remanded to a different ALJ to determine if there is any work available in the national economy that can be done by the plaintiff.

On remand a supplemental hearing was held before ALJ VerWiebe on December 27, 1984, at which the plaintiff appeared with counsel and a friend. In a decision dated February 22, 1985, ALJ VerWiebe found a residual functional capacity for the full range of light work, and applying the Grid, 20 C.F.R. Pt. 404, Subpart P, Appendix 2, determined the plaintiff to be not disabled. This decision became the final decision of the Secretary by adoption of the Appeals Council on May 17, 1985. The matter is now before the court on cross-motions for summary judgment supported by memoranda, and is ripe for ruling.

The issue is whether the final decision is supported by substantial evidence. The plaintiff contends that substantial evidence is lacking for three reasons: (1) the ALJ based the decision on defective vocational interrogatories, (2) the ALJ erred in assessing the medical evidence of record, and (3) the ALJ failed to take into account the plaintiff's pain. The defendant argues that the ALJ properly discounted both the plaintiff's allegations of disabling pain and her physician's opinion that she is disabled. The defendant further asserts that the allegedly defective interrogatories were nonessential to the ALJ's finding of a capacity for light work, and should, therefore, if defective, be considered harmless error.

### I.

The record indicates that the plaintiff was born on March 11, 1931, is a high school graduate, has attended a semester of college, and has worked as a "shop man" in a garden tractor factory and as a cook. The alleged onset of her disability is March 3, 1981, at which time she left her job due to back pain and weakness in her

legs. The plaintiff also has a history of high blood pressure, a hiatal hernia, pain, shortness of breath, dizzy spells, and tremors of the hands and head. The record contains approximately one hundred pages of medical records and doctor reports. Much of this medical evidence was summarized in this court's earlier order and will not be repeated here.

Since the hearing the plaintiff was hospitalized on August 17, 1984, complaining of chest pain described as having increased since July 3, 1984. She was discharged August 24, 1984, with a diagnosis of chest pain of undetermined etiology, having undergone cardiac catheterization. In a discharge report of the same date, Dr. Randy Suttor described the plaintiff as having atypical chest pain which started sharp and progressed to a dull ache in the left shoulder with some left hand numbness and possible shortness of breath and sweatiness. Chest x-rays two days prior to admission showed minimal enlargement of the heart which was thought to be due to a deformity of the rib cage. A treadmill exercise three days prior to admission revealed that the plaintiff reported chest pain at a heart rate of 123 without ST changes in the electrocardiogram. Cardiac catheterization showed normal results. The only medication prescribed on discharge was Davrocet, and it was recommended that the plaintiff consult a psychiatrist.

In a report dated September 7, 1984, Dr. Robert Yuhn, a psychiatrist, indicated that the plaintiff stated that she could not return to work mainly because of back trouble and shakiness of her head. Dr. Yuhn noted that at times the shakiness was severe, and at other times it disappeared. He noted generally normal responses and concluded that there was no evidence of serious psychopathology and that the plaintiff was in good contact with reality, but tended to exaggerate her physical symptoms. His diagnosis was "[s]omatization disorder with hysterical component. . . ."

On August 25, 1984, the plaintiff was examined by Dr. David Rothenberg, an internist. He reported hypertension well controlled with medication. With respect to her back pain the doctor recognized a ten year history "with repeated back injuries and status post lumbar laminectomy at the present time." He also indicated a marked limitation in range of motion of the lumbosacral spine, as well as straight leg raising which might signify further lumbar disc disease. He stated, however, that at the time there was no neurologic deficit on physical examination. He noted a history of peptic ulcer disease, and recognized the plaintiff's head tremor as lifelong, without having any neurologic deficit associated with it. He proposed several theories as possible explanations for the plaintiff's dizzy spells, but offered no particular diagnosis.

At the remand hearing the plaintiff submitted the transcript of a deposition connected with plaintiff's workmen's compensation claim, which contained the testimony of Dr. Feferman, the plaintiff's treating physician. Dr. Feferman, a neurological surgeon, testified on June 14, 1984, that he had operated on the plaintiff for a herniated disc in March of 1974. He indicated that he had placed the plaintiff on permanent partial disability of about 25% in November of 1975 due to pain, discomfort, and numbness in her leg. He stated that in July of 1981, the plaintiff was having heart problems and low back problems, and that her left calf was smaller than the right. He believed that the plaintiff probably had a herniated disc at that time, but that since she was not, in his opinion, a good candidate for surgery, he did not perform tests. He noted the plaintiff's high blood pressure, heart problems, and other difficulties as reasons why the plaintiff should not again have surgery.

Dr. Feferman stated that the plaintiff stopped working on March 5, 1981, due to numbness in her legs which caused her to fall, as well as swelling of the legs, and pain in her back. He indicated that when she was hospitalized from March 5th to March 18th in 1981, the plaintiff had tremendous pain with bending and marked limitation with straight-leg raising and an absent left ankle reflex, with both ankles swollen. He said that her blood pressure was 196/140. Dr. Feferman also pointed

out that the plaintiff's more recent back problems were on the left side whereas her earlier problems were on the right side. On cross-examination, he acknowledged that the plaintiff's emotional reactions to problems might contribute to her difficulties. He stated that she has both physical and nervous problems.

## II.

In his recommended decision ALJ Ver-Wiebe applied the sequential analysis of disability set forth at 20 C.F.R. § 404.1520(b)–(f), resolving the issue of disability at step five of the sequential process, and making the following findings:

1. The claimant met the disability insured status requirements of the Act on March 3, 1981, the date the claimant stated she became unable to work, and continues to meet them through December 31, 1986.

2. The claimant has not engaged in substantial gainful activity since March 3, 1981.

3. The medical evidence establishes that the claimant has severe low back pain with possible lumbar disc disease, somatization disorder, and controlled high blood pressure, but that she does not have an impairment or combination of impairments listed in, or medically equal to the one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The testimony of the claimant regarding her symptoms and limitation of function appears to be exaggerated, was not well-supported by the medical evidence and was not fully credible. The medical evidence itself contained a range of medical opinion regarding the severity of the claimant's impairments.

5. The claimant has the residual functional capacity to perform the physical exertion requirements of work except for lifting and carrying weights exceeding 20 pounds maximum or 10 pounds frequently. There are no significant nonexertional limitations (20 CFR 404.1545).

6. The claimant is unable to perform her past relevant work as a shop man.

7. The claimant has the residual functional capacity to perform the full range of light work (20 CFR 404.1567).

8. The claimant is 53 years old, which is defined as closely approaching advanced age (20 CFR 404.1563).

9. The claimant is a high school graduate (20 CFR 404.1564).

10. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

11. Section 404.1569 of Regulations No. 4 and Rule 202.15, Table No. 2 of Apendix 2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, she is not disabled.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f)).

Having carefully reviewed the record, the court concludes that the findings of the ALJ are supported by substantial evidence.

When the court reviews for substantial evidence, it views the record as a whole. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); *Schmoll v. Harris*, 636 F.2d 1146, 1149–50 (7th Cir.1980); *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir.1980). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*; *Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir.1977) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). The required evidence has been described as "more than a scintilla", *Richardson* at 401, 91 S.Ct. at 1427, but it may be "something less than the weight of the evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir.1986).

This court's review is limited in scope to determining whether the ALJ considered all relevant evidence, whether his resolution of conflicting factual matters was supported by substantial evidence, and wheth-

er the Secretary followed the law in reaching its conclusions. See *Delgado v. Bowen,* 782 F.2d 79, 82–83 (7th Cir.1986); *Zalewski v. Heckler,* 760 F.2d 160, 161–63 (7th Cir. 1985); see also *Cullotta v. Bowen,* 662 F.Supp. 1161 (N.D.Ill.1987). The court may not decide facts anew, reweigh evidence or substitute its own judgment. *Burnett v. Bowen,* 830 F.2d 731, 734 (7th Cir.1987); *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986); *Williams v. Bowen,* 663 F.Supp. 45, 48 (N.D.Ind.1987). If the Secretary's findings are supported by substantial evidence the court must affirm unless there has been an error of law. *Burnett* at 734; *Waite v. Bowen,* 819 F.2d 1356, 1360 (7th Cir.1987).

### III.

Addressing the issues raised by the plaintiff in order, the court, as a preliminary matter agrees with the defendant's argument, that having found substantial evidence to support the Secretary's findings, the matter of allegedly defective interrogatories need not be resolved.

■ The second issue raised by the plaintiff is the ALJ's treatment of the plaintiff's pain. By statute and in accordance with the case law of this jurisdiction, subjective complaints of pain are to be considered insofar as they are supported by objective medical evidence. 42 U.S.C. § 423(d)(5)(A); Sen.Rep. No. 466, 98th Cong. 2nd Sess. 3 (1984). Pain and related symptoms may be considered if medical evidence shows "the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged". *Sparks v. Bowen,* 807 F.2d 616 (7th Cir.1986) (quoting 42 U.S.C. § 423(d)(5)(A)). See also *Nelson v. Secretary,* 770 F.2d 682, 685 (7th Cir.1985). Where pain is found credible, benefits will not be denied for lack of a known etiology, but the plaintiff must show a condition that could reasonably be expected to produce the pain alleged. *Sparks,* 807 F.2d 616 (7th Cir.1986). Even if a claimant's subjective complaints of pain are supported by

evidence of a condition that could cause pain, an ALJ is not compelled to find the claimant disabled if the level of pain would not prevent working. *Cullotta v. Bowen,* 662 F.Supp. 1161, 1170 (N.D.Ill.1987). Such a situation calls for a credibility determination by the ALJ. *Id.* In this case the ALJ recognized the plaintiff's pain, but reviewed evidence indicating that the pain was exaggerated or magnified by emotional reaction, and that the medical evidence would not support the level of pain alleged. The defendant also reviewed the plaintiff's ability to perform routine activities. The defendant has correctly pointed out that unless an ALJ's credibility determination is patently erroneous, it will not be disturbed by this court. *Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986); *Szwandrok v. Bowen,* 658 F.Supp. 847, 849 (N.D.Ill.1987). This plaintiff undoubtedly suffers from pain, but the court cannot conclude on this record that the findings of the ALJ are patently erroneous reviewing from a standard of substantial evidence.

■ The final subissue raised by the plaintiff is the manner in which the ALJ assessed the medical evidence. Although the court does not reweigh evidence, there are certain guidelines that the courts have developed by which an ALJ is bound in evaluating medical evidence. All evidence must be weighed that is material and relevant, and an ALJ may not ignore evidence that suggests an opposite conclusion. *Whitney v. Schweicker,* 695 F.2d 784, 788 (7th Cir.1982); *Garcia v. Califano,* 463 F.Supp. 1098, 1105 (N.D.Ill.1979); *Rayborn v. Weinberger,* 398 F.Supp. 1303, 1311 (N.D.Ind.1975). This does not mean that the ALJ must provide a written evaluation of every piece of testimony and submitted evidence, *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985), but he or she must articulate, at some minimum level, significant evidence that is offered to counter the agency's position. *Burnett v. Bowen,* 830 F.2d 731, 735 (7th Cir.1987). See also, *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985); *Look v. Heckler,* 775 F.2d 192, 195 (7th Cir.1985). Additionally, the ALJ is required to explain why he or she rejects

uncontradicted evidence. *Stephens v. Heckler,* 766 F.2d 284, 287 (1985).

 Having carefully reviewed the record and the ALJ's decision, the court finds that these requirements are satisfied in this case. The plaintiff objects, however, that the ALJ improperly discredited the testimony of Dr. Feferman as her treating physician. Although the opinion of a treating physician was at one time accorded great deference, (see e.g. *Evans v. Heckler,* 734 F.2d 1012 (7th Cir.1984)), the mere fact that a physician treats the plaintiff does not, in and of itself, entitle the evidence to controlling weight. *Whitney v. Schweiker,* 695 F.2d 784, 788 (7th Cir.1982) (citing *Cummins v. Schweiker,* 670 F.2d 81 (7th Cir.1982)). More recently, it has been clarified that where experience backed by observation is set against the speculative statement of a consulting physician, substantial evidence will lie on the side of the treating physician, *Stephens v. Heckler,* 766 F.2d 284 (7th Cir.1985), but that the preference for the opinion of a treating physician will apply only where the ability to observe over a period of time is essential to an accurate understanding of the plaintiff's condition. *Garrison v. Heckler,* 765 F.2d 710 (7th Cir.1985). *Garrison* also refined these principles by adding that when a consulting physician adds new information or perspectives, such as a physical capacities evaluation, the evidence may be considered substantial. *Garrison,* 765 F.2d at 713. Throughout the development of these concepts the law has been clear that an ALJ need not defer to the opinion of a treating physician where conclusions as to disability are not supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.936; *Williams v. Bowen,* 663 F.Supp. 45, 49 (N.D.Ind.1987).

 In this case the defendant reviewed evidence of several physicians who also examined the plaintiff. Their opinions tended to support the findings of the Secretary. The ALJ considered the opinion of Dr. Feferman and rejected it as "out of step with most of the other doctors in evaluating her alleged cardiovascular prob-lems, an area which is outside his area of specialization." Dr. Feferman's opinion was rejected by the ALJ as lacking in credibility. The decision noted discrepancies in reported blood pressure readings, and inconsistencies in testimony. Without necessarily agreeing fully with the ALJ's interpretations, the court does not find the conclusions unsupported by substantial evidence inasmuch as a reasonable mind could so conclude.

 Having found that the final decision of the Secretary is supported by substantial evidence, the plaintiff's Motion for Summary Judgment is DENIED, and the defendant's Motion is GRANTED. The final decision of the Secretary is, therefore, affirmed. SO ORDERED.